IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 15-00090-01-CR-W-BP |
| JOHN C. McGAUTHA, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE AND STATEMENT (Doc. #21) filed on June 26, 2015, by defendant John C. McGautha ("McGautha"). On August 25, 2015, the undersigned held an evidentiary hearing on McGautha's motion. McGautha was present and represented by his counsel, Federal Public Defender Travis Poindexter. The government was represented by Assistant United States Attorney Joseph Marquez. At the evidentiary hearing, testimony was given by Officer Oliver Weeks with the Kansas City, Missouri Police Department. Additionally, the following exhibits were admitted into evidence:

      Gov't Ex. #1   [Dash camera video]
      Gov't Ex. #2   [Photograph]

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

## PROPOSED FINDINGS OF FACT

    1.    On March 11, 2015, Officer Oliver Weeks of the Kansas City (Mo) Police Department was assigned as a night shift patrol officer for Central Patrol. Tr. at 4, 7.

    2.    The Central Patrol area is a high-crime sector that has one of the highest violent crime rates in Kansas City. Tr. at 6-7.

3. On March 11, 2015, at approximately 10:20 p.m., Officer Weeks was patrolling near Wabash and 39th Street. Tr. at 7.

4. At that time, Officer Weeks observed a man walking in the middle of the street (Wabash). Tr. at 7, 8, 30.

5. It is illegal in Kansas City, Missouri to walk in the street where sidewalks are available. Tr. at 9, 35.

6. As the man saw Officer Weeks' vehicle approaching, he appeared to put his hands in his front pockets and then immediately go to the sidewalk. Tr. at 7, 8, 31.

7. Officer Weeks turned on his flashing lights, pulled his vehicle up near the man, and conducted an investigative stop. Tr. at 8, 9.

8. Officer had the man stand in front of the stopped vehicle so that his vehicle dashboard camera could record the encounter. Tr. at 8-9.

9. Officer Weeks asked the man to put his hands on the vehicle so that he could be frisked. Tr. at 10, 41.

10. At that point, the man said "I have a weapon on me." Tr. at 10.

11. At that point, Officer Weeks placed the man in handcuffs due to safety concerns. Tr. at 10.

12. Officer Weeks then located and removed a loaded weapon (a 9 mm. handgun) from the man's front right pocket. Tr. at 10, 16, 17.

13. Officer Weeks then continued frisking the man and found a knife in his front jacket pocket. Tr. at 11.

14. Officer Weeks then had the man sit down on the curb and he asked for his name and other information. Tr. at 11.

15. While he was seated, the man asked if he was going to jail because of the gun. Tr. at 11.

16. Officer Weeks explained that having a gun was not automatically illegal if you had a license. Tr. at 11, 20.

17. The man admitted that he did not have a "conceal and carry" gun license. Tr. at 11.

18. At that point, Officer Weeks believed the man was under arrest for having a weapon without a proper license to carry. Tr. at 12, 20-21.

19. Upon questioning, the man gave his name as "Avery Johnson" and provided a date of birth. Tr. at 12-13, 21.

20. Officer Weeks ran the name and date of birth though his dispatcher and was told there was "no record found on file." Tr. at 13.

21. Officer Weeks then asked the man for his Social Security number. Tr. at 13.

22. Again the dispatcher found no record and Officer Weeks then requested another police vehicle to come to the scene. Tr. at 13.

23. While waiting for the second vehicle, Officer Weeks continued conversing with the man seeking to learn his identity and, ultimately, the man disclosed that he was John McGautha and that he was a felon. Tr. at 13-14, 22.

24. Officer Weeks then called into a night shift detective and confirmed that McGautha was a felon. Tr. at 14.

25. At that point, instead of being under arrest for failure to have a license to carry, Officer Weeks considered McGautha under arrest for being a felon in possession. Tr. at 14.

26. Officer Weeks also issued a ticket to McGautha for illegally walking in the street. Tr. at 15.

27. Prior to McGautha being taken from the scene in an arrest wagon, Officer Weeks and the wagon driver – pursuant to police department procedure – each searched McGautha incident to his arrest. Tr. at 17, 22.

28. During that search, Officer Weeks opened McGautha's back pack and found a cigarette box containing marijuana. Tr. at 17.

## PROPOSED CONCLUSIONS OF LAW

In his motion to suppress, McGautha argues that his initial detention by Officer Weeks was unconstitutional and, in any event, the ensuing search of his person violated the Fourth Amendment. To be sure, the Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, though, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States,* 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

3

> No right is held more sacred, or is more carefully guarded, by the
> common law, than the right of every individual to the possession
> and control of his own person, free from all restraint or
> interference of others, unless by clear and unquestionable authority
> of law.

*Union Pacific Railroad Co. v. Botsford,* 141 U.S. 250, 251, 11 S.Ct. 1000, 1001 (1891).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. However, over the years, many exceptions to the warrant requirement have been recognized. For instance, in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868 (1968), the Supreme Court held that a law enforcement officer can stop and briefly detain a person for investigatory purposes, even without a warrant, if the officer has a reasonable suspicion –supported by articulable facts – that criminal activity "may be afoot," even if the officer lacks probable cause for an arrest. *Id.* at 30, 88 S.Ct. at 1884-85. However, the officer conducting such an investigatory stop must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id.* at 27, 88 S.Ct. at 1883. Moreover, the mere fact that an officer's suspicion or hunch, in fact, was well-founded is <u>not</u> dispositive for a constitutional analysis, rather, the Fourth Amendment requires "some level of objective justification for making the stop." *INS v. Delgado,* 466 U.S. 210, 217, 104 S.Ct. 1758, 1763 (1984).

In this case, however, the initial detention of McGautha need not be analyzed under *Terry.* Although challenged by McGautha, the Court finds that Officer Weeks was credible in testifying that he observed McGautha walking in the middle of the street – a violation of law. As such, Officer Weeks had probable cause to detain McGautha, at least for purposes of issuing him a citation.

4

McGautha argues that even if the initial seizure was justified, Officer Weeks crossed the constitutional boundaries when he initiated a frisk of McGautha. The Court disagrees. Officer Weeks was patrolling alone and at night in a high crime neighborhood. The Eighth Circuit has repeatedly "concluded that the fact that a suspect was detained late at night by a lone officer in a poorly lit area adds to the reasonableness of an officer's conclusion that the person detained should be frisked for weapons." *United States v. Roggeman*, 279 F.3d 573, 578 (8th Cir. 2002) (citing cases). Officer Weeks, under the circumstances, was justified in seeking to perform a protective frisk of McGautha.

Moreover, McGautha unsolicited statement that he was carrying a weapon was both spontaneous and voluntary. To that, the courts have "repeatedly held that '[a] voluntary statement made by a suspect, not in response to interrogation, is not barred [by the Fifth Amendment] and is admissible with or without the giving of Miranda warnings.'" *United States v. Turner,* 157 F.3d 552, 556 (8th Cir.1998) (*quoting*, *in part*, *Rhode Island v. Innis,* 446 U.S. 291, 299-300, 100 S.Ct. 1682, 1688-89 (1980)). Furthermore, having held that the initial frisk was justified, McGautha's statement is not the fruit of unconstitutional police action.

For the foregoing reasons, McGautha's arguments – that both the initial detention and the initial frisk were impermissible – fail and therefore provide no basis for suppression of the evidence recovered or of McGautha's statements. Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the MOTION TO SUPPRESS EVIDENCE AND STATEMENT (Doc. #21) filed on June 26, 2015, by defendant John C. McGautha.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and

serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

          */s/ John T. Maughmer*
          **John T. Maughmer**
          **United States Magistrate Judge**

6

Case 4:15-cr-00090-BP   Document 30   Filed 11/05/15   Page 6 of 6